UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SUSAN KURYLO,<br><br>            Plaintiff,<br><br>    vs.<br><br>SULLIVAN RIZZO, in<br>his individual capacity,<br><br>            Defendant | Civil No. 15-CV-0015-NT |

**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT, WITH INCORPORATED MEMORANDUM OF LAW**

Defendant Sullivan Rizzo, in his capacity as an Oxford County Sheriff's Department Deputy, was dispatched to respond to a domestic dispute complaint. The complainant, Pamela Reardon, had reported that she and her partner, Plaintiff Susan Kurylo, were having domestic issues. While Mr. Rizzo acknowledges that there are certain matters in dispute as to what happened when he responded to that complaint, Mr. Rizzo believes that he is entitled to partial summary judgment even if the court credits the version of events proffered by the Plaintiff. According to that version, certain facts are undisputed: the Plaintiff disabled Ms. Reardon's vehicle to prevent her from leaving the residence prior to Mr. Rizzo's arrival on the scene, and Ms. Reardon told Mr. Rizzo that the Plaintiff was preventing her from leaving; when Mr. Rizzo attempted to enter the home Ms. Reardon and the Plaintiff shared to assist Ms. Reardon in gathering her belongings, Plaintiff pushed the door into Mr. Rizzo, causing him pain in his back and causing a "bang" or "crash"; and Ms. Reardon informed Mr. Rizzo that the Plaintiff

1

had grabbed things from her that morning and had pushed up against her.  Based on these undisputed facts, Mr. Rizzo arrested Plaintiff for assault.  When issuing summonses to the Plaintiff, he also summonsed her for criminal restraint and domestic violence assault. His arrest and summonses were supported by probable cause. Moreover, Mr. Rizzo is protected from liability for his actions by qualified immunity. For these reasons, all of which discussed below, the Plaintiff cannot make out viable claims for false arrest or malicious prosecution. Pursuant to Federal Rule of Civil Procedure 56, Mr. Rizzo requests summary judgment on counts I and III of Plaintiff's Complaint.

## BACKGROUND

### I.     Facts

The factual background for the Motion for Partial Summary Judgment is set forth in the accompanying Statement of Material Facts, which is hereby incorporated by reference.

### II.     Procedural Posture

The Plaintiff commenced this action by a Complaint dated December 15, 2014. The Complaint asserts claims against Mr. Rizzo in three counts: violation of 42 U.S.C. § 1983 for false arrest (Count I); violation of 42 U.S.C. § 1983 for excessive force (Count II); and violation of § 1983 for malicious prosecution (Count III). The case was removed from Maine Superior Court for Oxford County to the United States District Court for the District of Maine on January 9, 2015.  Mr. Rizzo timely notified the Court of his intention to request summary judgment on Counts I and III.

## THE SUMMARY JUDGMENT STANDARD

According to Federal Rule of Civil Procedure 56(c), summary judgment must be granted in favor of the moving party if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In construing Rule 56(c), the United States Court of Appeals for the First Circuit has stated:

> When, as here, the movant-defendant has suggested that competent evidence to prove the case is lacking, the burden devolves upon the nonmovant-plaintiff to "document some factual disagreement sufficient to deflect *brevis* disposition."
> .....
> This burden is discharged only if the cited disagreement relates to a genuine issue of material fact. . . . "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law." . . . This requirement has sharp teeth: the plaintiff "must present definite, competent evidence to rebut the motion."

*Wynne v. Tufts Univ. Sch. of Medicine,* 976 F.2d 791, 794 (1st Cir. 1992) (citations omitted) (cited in *Halasz v. University of New England,* 816 F. Supp. 37, 38-39 (D.Me. 1993)).

The United States Supreme Court has emphasized that the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

## ARGUMENT

**I. THE PLAINTIFF'S CLAIMS ARE SUBJECT TO SUMMARY JUDGMENT BECAUSE THEY EITHER FAIL ON THEIR MERITS OR MR. RIZZO IS PROTECTED BY QUALIFIED IMMUNITY.**

Plaintiff asserts claims under 42 U.S.C. § 1983, alleging that her federal constitutional rights were violated as a result of the incident with Mr. Rizzo on July 29, 2013. The Plaintiff references alleged violations of her Fourth Amendment rights. (Complaint ¶ 30). Specifically, Plaintiff suggests that Mr. Rizzo "lacked probable cause to charge Ms. Kurylo with domestic assault, assault, or criminal restraint" and "acted maliciously in charging Ms. Kurylo with criminal conduct because he knew or should have known there was no probable cause to support the charges." (Complaint ¶¶ 32, 38).

**A. Ms. Kurylo's claim for false arrest fails because – even taken in the light most favorable to the Plaintiffs – the circumstances were sufficient to establish probable cause.**

In order to conform to the Fourth Amendment's guaranty against unreasonable seizures of the person, a police officer is required to base arrests on probable cause. *Beck* v. *Ohio*, 379 U.S. 89, 91 (1964); *Alexis v. McDonald's Rest.*, 67 F.3d 341, 349 (1st Cir. 1995). "The 'probable cause' analysis entails 'an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not [an assessment of] the officer's state of mind at the time the challenged action was taken.'" *Alexis*, 67 F.3d at 349 (quoting *Maryland* v. *Macon*, 472 U.S. 463, 470-71 (1985) (internal quotation marks omitted)). Probable cause exists if "the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that

the [defendant] had committed or was committing an offense." *Rivera* v. *Murphy*, 979 F.2d 259, 263 (1st Cir. 1992). "And, moreover, though probable cause requires more than mere suspicion, it does not require the same quantum of proof as is needed to convict." *Logue v. Dore*, 103 F.3d 1040, 1044 (1st Cir. 1997) (citing *United States* v. *Aguirre*, 839 F.2d 854, 857-58 (1st Cir. 1988)).

Mr. Rizzo issued summonses to the Plaintiff for assault, domestic violence assault, and criminal restraint.  Under Maine law, it is a Class D crime if a person "intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person." 17-A M.R.S. § 207(1)(A).  It is also a Class D crime if a person "violates section 207 and the victim is a family or household member." 17-A M.R.S. § 207-A(1)(A).  In this context, Maine law defines "family or household members" as follows:

> "Family or household members" means spouses or domestic partners or former spouses or former domestic partners, individuals presently or formerly living together as spouses, natural parents of the same child, adult household members related by consanguinity or affinity or minor children of a household member when the defendant is an adult household member and, for the purposes of Title 15, section 1023, subsection 4, paragraph B-1 and Title 15, section 1094-B, this chapter and Title 17-A, sections 15, 207-A, 209-A, 210-B, 210-C, 211-A, 1201, 1202 and 1253 only, includes individuals presently or formerly living together and individuals who are or were sexual partners. Holding oneself out to be a spouse is not necessary to constitute "living as spouses." For purposes of this subsection, "domestic partners" means 2 unmarried adults who are domiciled together under long-term arrangements that evidence a commitment to remain responsible indefinitely for each other's welfare.

19-A M.R.S. § 4002(4).  Lastly, it is a Class D crime if a person "knowingly restrains another person." 17-A M.R.S. § 302(1)(B)(1).

Maine law provides that a law enforcement officer may effect an arrest without a warrant of a person who "has committed or is committing in the officer's presence any

5

Class D or Class E crime." 17-A M.R.S. § 15(1)(B). Moreover, for the purposes of effecting a warrantless arrest, a crime occurs in an officer's "presence" when "one or more of the officer's senses afford that officer personal knowledge of facts that are sufficient to warrant a prudent and cautious law enforcement officer's belief that a Class D or Class E crime is being or has just been committed and that the person arrested has committed or is committing that Class D or Class E crime." 17-A M.R.S. § 15(2).

Even accepting the Plaintiff's version of events, there would be sufficient information known to Mr. Rizzo to support his decision to summons Ms. Kurylo for assault, domestic violence assault, and criminal restraint. At the time Mr. Rizzo applied handcuffs to the Plaintiff, there was ample probable cause for him to arrest her for assaulting him. The Plaintiff admits that she attempted to push the door closed behind her as she entered the house and that she heard a "bang" or "crash." She admits that she was not looking at the door when the bang occurred, and therefore cannot dispute that the door closed on Mr. Rizzo. And given her testimony that she was not looking when she pushed the door closed, her actions were at least "reckless" for the purposes of the assault statute. For his part, Mr. Rizzo clearly states that the Plaintiff slammed the door on him, causing pain to his back. These facts known to Mr. Rizzo were sufficient to warrant any prudent officer in believing that the Plaintiff had at least recklessly caused bodily injury or offensive physical contact to another person (namely, that officer).

Mr. Rizzo was also justified in summonsing the Plaintiff for domestic violence assault and criminal restraint when he met her at the Brownfield substation. After the Plaintiff was transported from her house by medical personnel, Ms. Reardon disclosed to Mr. Rizzo in a recorded interview that the Plaintiff had pushed up against her prior to Mr. Rizzo's arrival and that she had grabbed items out of her hands. Mr. Rizzo was also

aware that Ms. Reardon and the Plaintiff were living together and that Ms. Reardon identified the Plaintiff as her partner. This information was sufficient to warrant any prudent officer in believing that the Plaintiff had at least recklessly caused bodily injury or offensive physical contact to another person who met the definition of "family or household member."

Similarly, Mr. Rizzo was aware of sufficient facts to justify a summons for criminal restraint. The Plaintiff had admitted to him that she knowingly disabled Plaintiff's vehicle to prevent her from driving on the morning of the incident. Moreover, Ms. Reardon told Mr. Rizzo that the Plaintiff was preventing her from leaving, including grabbing her personal items from her and disabling her vehicle. Therefore, based on the admissions made by Plaintiff, the statements made by Ms. Reardon, and Mr. Rizzo being victimized himself by the Plaintiff, it would have been objectively reasonable for an officer to believe that the Plaintiff had committed the crimes for which Mr. Rizzo summonsed her.

### B. Malicious Prosecution

The viability of malicious prosecution as a theory of recovery under 42 U.S.C. § 1983 is far from clear. However, certain propositions appear to be reasonably settled. For example, the United States Court of Appeals for the Fifth Circuit has held that "'malicious prosecution' standing alone is no violation of the United States Constitution, and that to proceed under 42 U.S.C. § 1983 such a claim must rest upon a denial of rights secured under federal and not state law." *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003); *accord Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256 (1st Cir. 1996) (explaining that "a garden-variety claim of malicious prosecution garbed in the regalia of § 1983 must fail"). Moreover, a plurality of the United States Supreme

7

Court has held that "substantive due process may not furnish the constitutional peg on which to hang such a 'tort.'" *Albright v. Oliver*, 510 U.S. 266, 270 & n.4 (1994); *see also Roche*, 81 F.3d at 256 ("There is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution….") (citing *Albright*). Finally, the United States Court of Appeals for the First Circuit has consistently held that "the availability of a plainly adequate remedy under [state] law … defeats the possibility of a procedural due process claim…." *See Perez-Ruiz* v. *Crespo-Guillen*, 25 F.3d 40, 43 (1st Cir. 1994); *Roche*, 81 F.3d at 256; *Nieves v. McSweeney*, 241 F.3d 46, 53-54 (1st Cir. 2001).

The Supreme Court has never clearly articulated a viable constitutional basis for malicious prosecution under Section 1983. While the plurality in *Albright* held that the plaintiff's claim in that case – which was framed as a malicious prosecution claim – could only be properly analyzed as a potential constitutional claim under the Fourth Amendment, the Court declined to state whether the claim was *in fact* viable under the Fourth Amendment. *Albright*, 510 U.S. at 274-75. The Supreme Court has not revisited this question since its decision in *Albright*.

To fill the void left by the Supreme Court, the United States Courts of Appeals have taken two distinct approaches to malicious prosecution claims under Section 1983. The First, Second, Third, Ninth, and Tenth Circuits require "proof of all common law elements of malicious prosecution, usually based on the law of the state where the offense occurred, as well as proof of a constitutional violation." *Castellano*, 352 F.3d at 949. In contrast, the Fourth, Seventh, and Eleventh Circuits views malicious prosecution as unenforceable under § 1983, only considering the common law elements

8

of the tort "as needed to assist the enforcement of analogous constitutional violations." *Id.*

Notably, the First Circuit's attempts to bring order to this chaos have extended to a claim of malicious prosecution arising out of a warrantless arrest. In *Nieves v. McSweeney*, 241 F.3d 46 (1st Cir. 2001), the plaintiffs asserted Section 1983 claims against several officers who arrested them without warrants. In part, the plaintiffs argued that the officers should be held liable for malicious prosecution in violation of the Fourth Amendment. *Id.* at 49. On appeal from an order of summary judgment in favor of the officers, the First Circuit assumed (without deciding) that malicious prosecution was actionable as a Fourth Amendment violation. *Id.* at 54 (citations omitted). However, the First Circuit noted that malicious prosecution "permits damages for a deprivation of liberty – a seizure – *pursuant to legal process*." *Id.* (citations omitted). The First Circuit further observed that the plaintiffs were arrested without a warrant. *Id.* The First Circuit therefore held: "their arrests -- which antedated any legal process -- cannot be part of the *Fourth Amendment* seizure upon which they base their *section 1983* claims." *Id.* To buttress this conclusion, the First Circuit relied upon its decision in *Meehan v. Town of Plymouth*, 167 F.3d 85 (1st Cir. 1999), where the court held:

> Meehan may not bring a malicious prosecution claim based upon his arrest because his arrest does not constitute the "initiation of proceedings" against Meehan. … Meehan's arrest was not made pursuant to an arrest warrant. Meehan cites no authority for the proposition that a malicious prosecution cause of action may be based upon a warrantless arrest.

*Id.* at 89-90 (citations omitted) (quoted in *Nieves*, 241 F.3d at 54).

9

To the extent the First Circuit has indicated that malicious prosecution could be grounded in the Fourth Amendment, such a theory would not apply in this case because Ms. Kurylo's claim against Mr. Rizzo is premised entirely upon her warrantless arrest.[1] Pursuant to *Nieves v. McSweeney*, 241 F.3d 46, 54 (1st Cir. 2001), such a claim is clearly not actionable under Section 1983. Moreover, to the extent Ms. Kurylo grounds her claim on the Fourteenth Amendment, her claim fails because Maine recognizes the tort of malicious prosecution. *See Meehan*, 167 F.3d at 88 ("A § 1983 claim for malicious prosecution as a deprivation of procedural due process is barred where, as here, the state's tort law recognizes a malicious prosecution cause of action."); *see also Nadeau v. State*, 395 A.2d 107, 116 (Me. 1978) (discussing the elements of malicious prosecution under Maine law). Therefore, she cannot premise a malicious prosecution claim upon the Due Process Clause.[2]

### C. Mr. Rizzo is protected from liability by qualified immunity.

Mr. Rizzo is entitled to judgment on the Plaintiffs' civil rights claims based on qualified immunity. The doctrine of qualified immunity protects police officers from liability for civil damages under Section 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mlodzinski v. Lewis*, 648 F.3d 24, 32 (1st Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting *Harlow*

---

[1] The Plaintiff admitted in her interrogatory responses that she does not allege to have sustained any deprivation of liberty after her arraignment. (DSMF ¶ _____ (Pl's Interrog. Ans. ¶ 11)). Therefore, her "malicious prosecution claim" is based entirely on the warrantless arrest.

[2] Of course, after *Albright*, the Plaintiff cannot premise her malicious prosecution claim on substantive due process. *Albright v. Oliver*, 510 U.S. 266, 270 & n.4 (1994) ("substantive due process may not furnish the constitutional peg on which to hang such a 'tort.'"); *see also Roche*, 81 F.3d at 256 ("There is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution....") (citing *Albright*).

*v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (internal quotation marks omitted)). Qualified immunity affords police officers "immunity from suit and not a mere defense to liability." *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009). The purpose of qualified immunity, as described by the United States Supreme Court, is to "give[] government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In short, qualified immunity protects government officials for objectively reasonable decisions, even if those decisions turn out to be incorrect:

> The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.' *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (Kennedy, J., dissenting) (quoting *Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), for the proposition qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

*Pearson*, 555 U.S. at 231.

The Court employs a two-prong analysis in determining whether a defendant is entitled to qualified immunity. The Court examines "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Id.* at 269. The Court's second inquiry itself has two parts: the Court asks "(a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have

11

understood that his conduct violated the right." *Mlodzinski*, 648 F.3d at 32-33 (citing *Decotiis v. Whittemore*, 635 F.3d 22, 36 (1st Cir. 2011)).

This inquiry is designed to determine "whether the state of the law at the time would have given a reasonably competent officer 'clear notice that what he was doing was unconstitutional.'" *Decotiis v. Whittemore*, 635 F.3d 22, 37 (1st Cir. 2011) (quoting *Costa-Urena v. Segarra*, 590 F.3d 18, 29 (1st Cir. 2009)) (internal quotation mark omitted). It is an objective test: an officer is not entitled to qualified immunity *only* if "*every* 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (emphasis added) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In other words, if "officers of reasonable competence could disagree" on the lawfulness of the action, an officer is entitled to immunity. *Malley*, 475 U.S. at 341.

Applying the test for qualified immunity articulated by the Supreme Court and the First Circuit, the Plaintiff's claims against Mr. Rizzo are barred by qualified immunity. As discussed above, the Plaintiff has failed to present viable claims of unlawful arrest and malicious prosecution under Section 1983. For this reason alone, Mr. Rizzo is entitled to immunity.

Even if the Court moves to the second step of the qualified immunity inquiry, the analysis favors Mr. Rizzo. With regard to the malicious prosecution claim, the law is still unsettled as to whether such a claim is actionable under Section 1983. Therefore, the legal contours of the right in question were not sufficiently clear that a reasonable

officer would have understood that what he was doing violated the right.  Absent a "clearly established right," Mr. Rizzo is entitled to qualified immunity.[3]

Turning to the arrest claim, although the right to be free from seizure without probable cause is a clearly established right, a reasonable officer could have believed that Mr. Rizzo's actions in first detaining and then summonsing the Plaintiff were not unlawful.  Even based on the events alleged by the Plaintiff, a reasonable officer could have believed that the elements for the crime of assault existed when the Plaintiff pushed the door closed on Mr. Rizzo with sufficient force to cause a "bang" and to cause Mr. Rizzo to experience pain in his back.  Similarly, given the Plaintiff's admission that she disabled complainant's vehicle to prevent her from leaving the residence, a reasonable officer could believe that a criminal restraint had occurred.  Finally, a reasonable officer could have believed that probable cause for the crime of domestic violence assault existed at the time Mr. Rizzo issued summonses to the Plaintiff in light of the information Ms. Reardon gave to dispatch and her subsequent statements to Mr. Rizzo that Plaintiff had gotten physical with her that morning while Ms. Reardon was on crutches.  Under these circumstances, not *every* officer would have believed that Mr. Rizzo's actions were unlawful.  Therefore, Mr. Rizzo is entitled to summary judgment on Counts I and III of Plaintiff's complaint because he is protected by qualified immunity.

---

[3] Even if the law had been clearly established, a reasonable officer could have believed that his actions did not violate the Plaintiff's constitutional rights based on a brief period of detention followed by the issuance of summonses. As neither of these events could have given rise to a constitutional claim based on malicious prosecution (since they do not involve a deprivation of liberty pursuant to legal process), an officer would be fully justified in viewing these actions as lawful.

## CONCLUSION

For the reasons set forth in this Motion and incorporated memorandum of law, Mr. Rizzo is entitled to summary judgment Counts I and III of Plaintiff's Complaint.

Dated at Portland, Maine this 21st day of March, 2016.

>                  Attorneys for Defendant Sullivan Rizzo
>                  MONAGHAN LEAHY, LLP
>                  95 Exchange Street, P.O. Box 7046
>                  Portland, ME 04112-7046
>                  (207) 774-3906
> BY:    /s/ John J. Wall, III
>                  John J. Wall, III

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2016, I electronically filed **Defendant's Motion for Partial Summary Judgment, With Incorporated Memorandum of Law** using the CM/ECF system, which will provide notice to me and the following other counsel of record: Hunter J. Tzovarras (mainedefender@gmail.com).

Dated at Portland, Maine this 21st day of March, 2016.

>                  Attorneys for Defendant Sullivan Rizzo
>                  MONAGHAN LEAHY, LLP
>                  95 Exchange Street, P.O. Box 7046
>                  Portland, ME 04112-7046
>                  (207) 774-3906
> BY:    /s/ John J. Wall, III
>                  John J. Wall, III