UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SUSAN KURYLO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 2:15-cv-15-NT |
| | ) |
| SULLIVAN RIZZO, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before me is the Defendant's motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 29). For the reasons stated below, the motion is **GRANTED.**

**FACTUAL BACKGROUND**[1]

This case arises out of a warrantless arrest that occurred on the morning of July 29, 2013. On that morning, then-Oxford County Sheriff's Department Deputy Sullivan Rizzo ("**Deputy Rizzo**" or the "**Defendant**") was advised by the Oxford County Sheriff's Department dispatcher that there was a domestic dispute at the residence shared by Pamela Reardon and Susan Kurylo, the Plaintiff in this matter. Consolidated Statements of Material Fact and Resps. ¶¶ 1, 5-7 ("**SMF**") (ECF No. 47). Reardon had informed the dispatcher that she and her partner were having problems

---

[1] The following recitation is largely based on the Plaintiff's version of the facts. Deputy Rizzo disputes much of the Plaintiff's account, but at the summary judgment stage, I must view the facts in the light most favorable to the non-moving party and make all reasonable inferences in her favor. *Johnson v. Univ. of P.R.*, 714 F.3d 48, 52 (1st Cir. 2013).

and that her partner was upset. SMF ¶ 2. Reardon also informed the dispatcher that her partner would not permit her to leave the house and had disabled her car. SMF ¶¶ 3-4.

When Deputy Rizzo arrived at the residence, he found Reardon outside in a wheelchair. SMF ¶ 9. Deputy Rizzo did not notice any fresh cuts or injuries on Reardon.[2] SMF ¶ 47. Reardon told him that she had been arguing all morning with her partner Kurylo and that she wanted to leave the residence but Kurylo had disabled Reardon's vehicle. SMF ¶¶ 10-11, 46. She also told Deputy Rizzo that Kurylo kept a gun in a lockbox in the basement of the house. SMF ¶ 83.

Kurylo had been outside speaking to Reardon when Deputy Rizzo arrived in his police car, but she went inside when the police car pulled up. Pl.'s Ans. to Interrog. 7 (ECF No. 35). While Deputy Rizzo was attempting to figure out what was wrong with Reardon's car, Kurylo came back outside because she did not want Deputy Rizzo to damage the car. Pl.'s Ans. to Interrog. 7. Deputy Rizzo asked Kurylo if she disabled the car, and she initially told him that she did not. Pl.'s Ans. to Interrog. 7. Kurylo later admitted to Deputy Rizzo that she had disabled Reardon's vehicle to keep her from driving. SMF ¶ 12. Both Kurylo and Reardon told Deputy Rizzo that Reardon was not supposed to drive per her doctor's order. SMF ¶¶ 49-51.

At some point, Kurylo told Reardon that she was going back inside to finish feeding their pets, and Reardon said that she wanted to get some of her things from

---

[2] "Statements that are qualified are assumed to be admitted subject to that qualification, unless a qualification indicates otherwise." *Stark v. Hartt Transp. Sys., Inc.*, 37 F. Supp. 3d 445, 451 n.2 (D. Me. 2014). I have omitted qualifications that are unsupported, redundant, or immaterial.

2

the house. Pl.'s Ans. to Interrog. 8-9. Kurylo said to Reardon that she could come inside the house to get her things.³ *See* SMF ¶ 52.

As Kurylo went back inside the house, Deputy Rizzo bolted after her. SMF ¶ 59. When Kurylo was a few feet inside the house, she heard a loud bang, and the door flew open and struck her in the back.⁴ SMF ¶¶ 61-62, 65; Pl.'s Ans. to Interrog. 9. Kurylo realized that Officer Rizzo had kicked the door open, and she noticed Deputy Rizzo's sole print scratched into the paint of the entry door. SMF ¶¶ 66-67. Deputy Rizzo then grabbed her, a struggle ensued, and Kurylo was placed under arrest for assaulting him. *See* SMF ¶¶ 20, 69, 75.

Kurylo was taken by an ambulance to a local hospital because she sustained injuries during her arrest. SMF ¶ 37. After the arrest, Deputy Rizzo conducted a recorded interview with Reardon about the incident. SMF ¶¶ 25-26. She told Deputy Rizzo that Kurylo had been physically and verbally abusive with her in the past. SMF ¶ 27. Reardon also told Deputy Rizzo that Kurylo was screaming at her that morning

---

³       The Defendant interposed a qualified response to this fact, asserting that there is no evidence suggesting that Deputy Rizzo heard this comment. Drawing all reasonable inferences in the Plaintiff's favor, I infer that Deputy Rizzo heard this comment.

⁴       The Defendant claims that Kurylo slammed the door on him as he was helping Reardon enter the house, but he accepts, for the purposes of the motion, the Plaintiff's version of the events at the doorway. *See* Rizzo Dep. 33-34, 36 (ECF No. 33). But the Plaintiff herself gives an inconsistent account of what happened at the door. *Compare* Consolidated Statements of Material Fact and Resps. ¶ 65 ("**SMF**") (ECF No. 47) ("Once Ms. Kurylo is inside the home, the door flies open and hits her in the back."), *and* Pl.'s Ans. to Interrog. 9 (ECF No. 35) ("As I walked away from the door, as it was almost fully closed, I heard a loud bang. The door flew open and forcefully struck me in the back."), *with* Kurylo Dep. 53-55 (ECF No. 31) (describing the door incident without reference to the door hitting her in the back), *and* SMF ¶ 66 (Kurylo turns around and realizes Officer Rizzo is kicking the door open). I present the facts in the light most favorable to the Plaintiff and consider only the facts most favorable to her where her own facts contradict one another. So, for the purposes of this motion, I consider the facts to be that Deputy Rizzo kicked the door in and that it struck the Plaintiff in the back.

and that she had attempted to leave, but Kurylo grabbed her bag and wallet. SMF ¶ 29. Reardon said that Kurylo had gotten right up against her and leaned into her so hard that she would have fallen down if she had not been up against a bed. SMF ¶¶ 30-31. Reardon was afraid that Kurylo would hit her because she had hit her in the past. SMF ¶¶ 32-33.

Later in the afternoon at the Brownfield Substation, Deputy Rizzo gave Kurylo three summonses for assault, domestic violence assault, and criminal restraint. SMF ¶¶ 39-40. Kurylo was not deprived of her liberty at any time following her arraignment. SMF ¶ 44. All of the criminal charges brought against her were eventually dismissed.[5] SMF ¶ 85.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." *Johnson v. Univ. of P.R.*, 714 F.3d 48, 52 (1st Cir. 2013) (citation and quotations omitted). "A fact is material if it has potential to determine the outcome of the litigation." *Id.* On a motion for summary judgment, courts construe the record in the light most favorable to the non-movant and resolve all reasonable inferences in the non-movant's favor. *Burns v. Johnson*, 829 F.3d 1, 8 (1st Cir. 2016).

---

[5] The record is silent as to why the charges were dropped.

## DISCUSSION

Kurylo filed this three-count lawsuit in December of 2014. *See* Compl. (ECF No. 3-3). She presses claims for false arrest, excessive force, and malicious prosecution under 42 U.S.C. § 1983. Compl. ¶¶ 29-39. Deputy Rizzo's motion for summary judgment is limited to the claims for false arrest and malicious prosecution.

**I.     False Arrest**

Kurylo presses a § 1983 claim for false arrest in violation of the Fourth Amendment. *See* Compl. ¶¶ 29-33. Deputy Rizzo contends that he is entitled to summary judgment on Kurylo's false arrest claim because taking the undisputed facts in the light most favorable to Kurylo, there was probable cause to arrest her. Def.'s Mot. for Partial Summ J. 4-7 (ECF No. 29). He argues that the undisputed facts establish probable cause to arrest Kurylo both for an assault on him and criminal restraint of Reardon. Although I think the facts are sufficiently in dispute on whether Kurylo assaulted Deputy Rizzo, I agree that the undisputed facts are sufficient to support a finding of probable cause for an arrest on the basis of criminal restraint.

"Probable cause exists when the facts and circumstances within the police officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that defendant had committed or was committing an offense." *United States v. Pardue*, 385 F.3d 101, 107 (1st Cir. 2004) (citing *United States v. Fiasconaro*, 315 F.3d 28, 34-35 (1st Cir. 2002)). The probable cause analysis is objective and is conducted "from the perspective of a reasonable person in the position of the officer." *Holder v. Town of Sandown*, 585 F.3d 500, 504 (1st Cir. 2009). Courts do not consider "the actual motive or thought process of the

officer" involved. *Id.* (citation and internal quotations omitted). "The only relevant facts are those known to the officer," and "[w]hen these facts are in reasonable dispute, the fact-finder must resolve the dispute." *Id.* If, however, "the underlying facts claimed to support probable cause are not in dispute, whether those 'raw facts' constitute probable cause is an issue of law." *Id.* (quoting *Bolton v. Taylor*, 367 F.3d 5, 8 (1st Cir. 2004)).

Deputy Rizzo maintains that he had probable cause to arrest Kurylo for criminal restraint.[6] Def.'s Mot. for Partial Summ. J. 13. A person is guilty of criminal restraint under Maine law if she "knowingly restrains another person." 17-A M.R.S.A. § 302(1)(B)(1). "Restrain," in relevant part, is defined as:

> [T]o restrict substantially the movements of another person without the other person's consent or other lawful authority by . . . [c]onfining the other person for a substantial period either in the place where the restriction commences or in a place to which the other person has been moved . . . .

17-A M.R.S.A. § 301(2)(C). The Maine Supreme Judicial Court, sitting as the Law Court, has held that a confinement that lasted less than 30 minutes could constitute a substantial period. *State v. Hofland*, 58 A.3d 1023, 1030-31 (Me. 2012) ("Although the students' confinement lasted less than thirty minutes . . . a trier of fact rationally could have found that Hofland restrained the students for a substantial period of time . . . .").

---

[6] Maine law enforcement officers may perform a warrantless arrest "on "[a]ny person who has committed or is committing in the officer's presence any Class D . . . crime." 17-A M.R.S.A. § 15(1)(B). Criminal conduct occurs in a law enforcement officer's presence if "the officer's senses afford that officer personal knowledge of facts that are sufficient to warrant a prudent and cautious law enforcement officer's belief that that a Class D . . . crime is being or has just been committed and that the person arrested has committed or is committing that Class D . . . crime." 17-A M.R.S.A. § 15(2).

6

At the time of the arrest, Deputy Rizzo was aware of the following undisputed facts: (1) he was responding to a call regarding a domestic dispute; (2) when he arrived at the residence, Reardon was outside in a wheelchair; (3) Reardon said she wanted to leave the house but Kurylo had disabled her vehicle; (4) Kurylo first denied that she had disabled the vehicle but later admitted that she had done so to prevent Reardon from driving; and (5) both Kurylo and Reardon explained to Deputy Rizzo that Reardon was under doctor's orders not to drive. SMF ¶¶ 9-10,12, 49-51; Pl.'s Ans. to Interrog. 7. Given these undisputed facts, probable cause existed to support an arrest of Kurylo on a charge of criminal restraint.[7] 17-A M.R.S.A. § 302(B)(1).

In arguing to the contrary, Kurylo contends that "she told Officer Rizzo she did not prevent [Reardon] from taking her belongings from the house," and she points to the fact that Deputy Rizzo knew that Reardon was under doctor's orders not to drive. Pl's Opp'n 5. The fact that the alleged perpetrator has offered a self-serving version of the events does not defeat probable cause. After initially denying it, Kurylo herself admitted that she had disabled Reardon's vehicle to prevent her from driving. Reardon had told Deputy Rizzo that Kurylo had prevented her from leaving. "The uncorroborated testimony of a victim . . . , standing alone, ordinarily can support a finding of probable cause." *Acosta v. Ames Dep't Stores, Inc.*, 386 F.3d 5, 10 (1st Cir. 2004). Although Kurylo may have had a potential affirmative defense to the criminal

---

[7] The fact that Deputy Rizzo testified that he arrested Kurylo for assaulting him is immaterial. *See* SMF ¶ 20. The Supreme Court has held that "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause. That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (internal citations omitted).

7

restraint charge because Reardon was under doctor's orders not to drive,[8] "the Supreme Court has flatly rejected the idea that the police have a duty to investigate potential defenses before finding probable cause" because "[p]robable cause determinations are, virtually by definition, preliminary and tentative." *Acosta*, 386 F.3d at 11 (citing *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979)). On these uncontested facts, a reasonable officer would have probable cause to arrest Kurylo for criminal restraint.

It is important to note that the Plaintiff has not raised a Fourth Amendment claim for unlawful entry. Her argument focuses entirely on the purported lack of probable cause to support the arrest. The Complaint likewise characterizes the pertinent constitutional violation as being limited to a deprivation of Kurylo's right "to be free from arrest without probable cause." Compl. ¶ 30. She has not argued that even if Deputy Rizzo had probable cause, he nevertheless violated the Fourth Amendment by entering her home without a warrant or exigent circumstances. *See Payton v. New York*, 445 U.S. 573, 590 (1980) ("[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.").

Because I find that on these undisputed facts, Deputy Rizzo had probable cause to arrest Kurylo,[9] I do not reach the Defendant's qualified immunity claim.

---

[8] I assume that Kurylo is attempting to invoke a statutory affirmative defense. *See, e.g.*, 17-A M.R.S.A. § 103 (competing harms defense). She has not, however, actually articulated this argument.

[9] The parties argue over whether Deputy Rizzo had probable cause to summons Kurylo hours after she was arrested and released from the hospital. This dispute is likely the result of the Plaintiff's allegation in the Complaint that "Rizzo lacked probable cause to charge Ms. Kurylo with domestic assault, assault, or criminal restraint." Compl. ¶ 32. Section 1983 provides remedies for individuals

## II. Malicious Prosecution

To succeed on a federal claim for malicious prosecution, a plaintiff "must do more than simply satisfy the elements of the common law tort of malicious prosecution." *Moreno-Medina v. Toledo*, 458 F. App'x 4, 7 (1st Cir. 2012). Instead, a plaintiff must "show a deprivation of liberty, *pursuant to legal process*, that is consistent with the concept of a Fourth Amendment seizure."[10] *Harrington v. City of Nashua*, 610 F.3d 24, 30 (1st Cir. 2010) (emphasis added). Normally, the requisite "legal process comes either in the form of an arrest warrant (in which case the arrest would constitute the seizure) or a subsequent charging document (in which case the sum of post-arraignment deprivations would comprise the seizure)." *Nieves v. McSweeney*, 241 F.3d 46, 54 (1st Cir. 2001).

The Defendant contends that the malicious prosecution claim fails because it is premised on Kurylo's warrantless arrest. Def.'s Mot. for Partial Summ. J. 10. The First Circuit has consistently held that a claim for malicious prosecution cannot be based on a warrantless arrest because such an arrest occurs before the involvement

---

deprived of federal rights by officials acting under color of state law. 42 U.S.C. § 1983. The federal right at issue here is the Fourth Amendment right to be free from unreasonable seizures. It is axiomatic that a § 1983 claim for false arrest requires an actual seizure or arrest. *See Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("[A]ll of the compensable damages in a successful false arrest claim stem from injuries associated with the detention itself, and not with the individual charges."). But the parties have not pointed to any evidence showing that Deputy Rizzo arrested or seized Kurylo after providing her with the summonses at the Brownfield substation. And a summons alone does not amount to a Fourth Amendment seizure. *Britton v. Maloney*, 196 F.3d 24, 30 (1st Cir. 1999). Thus, I fail to see how the summonses could ground a § 1983 claim for false arrest under the Fourth Amendment.

[10]   The Plaintiff is basing her malicious prosecution claim on the Fourth Amendment. *See* Pl.'s Opp'n to Def.'s Mot. for Partial Summ. J. 8 ("**Pl.'s Opp'n**") (ECF No. 41). The First Circuit has assumed without deciding that a § 1983 claim for malicious prosecution can be grounded on a Fourth Amendment violation. *See Harrington v. City of Nashua*, 610 F.3d 24, 30 (1st Cir. 2010).

of any legal process. *See, e.g., Harrington*, 610 F.3d at 32 ("Where . . . a person is arrested without a warrant and before the issuance of any legal process, that arrest does not form part of a Fourth Amendment seizure upon which a section 1983 malicious prosecution claim may be premised."); *Nieves*, 241 F.3d at 54 ("The appellants were arrested without a warrant and, thus, their arrests—which antedated any legal process—cannot be part of the Fourth Amendment seizure upon which they base their section 1983 claims."); *Meehan v. Town of Plymouth*, 167 F.3d 85, 90 (1st Cir. 1999) ("Meehan cannot base a malicious prosecution claim on his warrantless arrest, because it did not constitute legal process."). And the First Circuit has also held that the issuance of a summons does not qualify as a seizure for purposes of a § 1983 malicious prosecution claim. *Britton v. Maloney*, 196 F.3d 24, 30 (1st Cir. 1999) (issuance of a summons, standing alone, is "insufficient to establish a seizure within the meaning of the Fourth Amendment"). Thus, the warrantless arrest and summonses cannot form the basis for Kurylo's malicious prosecution claim.

Instead, Kurylo must show some post-arraignment deprivation of liberty that constitutes a Fourth Amendment seizure. *See Nieves*, 241 F.3d at 54. Kurylo admits that she was not deprived of her liberty at any time after her arraignment. SMF ¶ 44. Accordingly, Deputy Rizzo is entitled to summary judgment on this claim.[11]

---

[11] The Plaintiff contends that "[t]he dispositive question on summary judgment appears to be whether Ms. Kurylo was seized as part of the criminal process." Pl.'s Opp'n 9. This is an incorrect statement of the law. The controlling question is whether Kurylo suffered a deprivation of her liberty pursuant to *legal* process.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Defendant's motion for partial summary judgment (ECF No. 29).

SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 12th day of October, 2016.